**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

HENRY L. POITRAS,

Plaintiff,

v.

CHARITY CLARK, Attorney General of
Vermont, in her Official and
Personal Capacities,

Defendant.

Case No. 2:26-cv-234

**DEFENDANT'S MOTION TO DISMISS PERSONAL CAPACITY CLAIMS**

Defendant Charity Clark hereby moves under Fed. R. Civ. P. 12(b)(6) to dismiss the personal claims against her for failure to state a claim upon which relief can be granted.[1]

**MEMORANDUM OF LAW**

Henry Poitras's personal capacity claims against Attorney General Charity Clark lack merit and should be dismissed. At its core, this case is a run-of-the-mill preenforcement challenge: Poitras dislikes Vermont's new synthetic media disclosure law, worries that the law will be enforced against him, and has sued the official tasked with enforcing the law to obtain injunctive relief.

The Complaint does not state a personal capacity claim against Attorney General Clark. For one, the Complaint does not allege that Attorney General Clark, through her own individual actions, violated Poitras's rights. And even if it did, Attorney General Clark would be entitled to qualified immunity because it was objectively reasonable for her to rely on and enforce a brand-

---

[1] This motion addresses only Poitras's personal capacity damages claims and does not seek dismissal of the official capacity claims for declaratory and injunctive relief.

new, presumptively valid statute that no court had yet addressed. Each of those defects is independently fatal to Poitras's personal capacity claims. The Court should dismiss the personal capacity claims with prejudice.

**BACKGROUND**

## I.      Statutory Overview

In recent years, technological advances have made it possible to create a near-facsimile of a specific individual's voice and likeness. Vermont, like many other states across the country,[2] responded to this growing threat to public discourse by enacting a law to govern the use of such "synthetic media" in connection with elections. That statute, "An act relating to the use of synthetic media in elections," was enacted in March 2026 as Act 75 of 2026.

The new law prohibits individuals from knowingly distributing "deceptive and fraudulent synthetic media" in the 90 days before an election unless the distributor includes a disclosure stating that the media has been digitally manipulated. 17 V.S.A. § 2032(a). For a video, the disclosure must "appear for the full duration of the video." *Id.* § 2032(a)(1).

The Act defines "deceptive and fraudulent synthetic media" as media that "appears to a reasonable person to be a realistic representation" of a political candidate and either "injures the reputation of a political candidate," *id.* § 2031(1)(A), or "attempts to unduly influence the outcome of an election . . . by providing materially false information to voters," *id.* § 2031(1)(B). The Act defines "synthetic media" broadly to include any image, audio recording, or video that

---

[2] *See, e.g.*, Ala. Code § 17-5-16.1; Ariz. Rev. Stat. Ann. § 16-1024; Idaho Code § 67-6628A; Ky. Rev. Stat. Ann. § 117.322; Minn. Stat. § 609.771; N.Y. Elec. Law § 14-106; N.D. Cent. Code § 16.1-10-04.2; S.D. Codified Laws §§ 12-26-32 to 12-26-37; Wash. Rev. Code §§ 29B.35.010 *et seq*.

was "created or intentionally manipulated with the use of digital technology, including artificial intelligence." *Id.* § 2031(2).

The Act contains several safe harbors. Relevant here, the statute exempts producers or distributors of "satire or parody" from the disclosure requirement. *Id.* § 2032(b)(3). The statute also exempts broadcasters and news outlets that use synthetic media as part of publications, provided they acknowledge the questionable authenticity of such content. *Id.* § 2032(b)(1)-(2).

The Act creates two enforcement mechanisms. First, the Act authorizes fines for violations and permits an injured candidate to seek injunctive or other equitable relief against covered publication or distribution. *Id.* § 2033(a)-(b). Second, and relevant here, the Act grants the Attorney General authority to investigate suspected violations of Act 75, *id.* § 2041, including through civil investigative demands compelling sworn testimony and document production, *id.* § 2042.

## II.      Factual Background

Plaintiff, Henry Poitras, is a Vermont resident who distributes digital content under the pseudonym "Planet Hank." Compl. ¶ 21 (ECF 1). Poitras describes at least some of his content as satire, admits to using "artificial intelligence and other digital tools" to generate his content, and avers that he "intends to continue to do so in the future." *Id.*

On June 7, 2026, Poitras posted a short video to his various social media accounts entitled "Mark Helps Vermont Take Out The Trash." Compl. ¶ 27. The video contains realistic depictions of Representative Becca Balint, Vermont's representative in the U.S. Congress, and Mark Coester, a candidate running in the Republican primary hoping to take on Rep. Balint. Compl. ¶¶ 2, 4. The video opens with a closeup of Rep. Balint that is realistic and takes up most of the screen, containing detailed facial features and even a congressional pin on her lapel. Compl. ¶ 2. The remainder of the video includes negative depictions of Rep. Balint and

culminates in a scene depicting a photorealistic representation of Coester grabbing a photorealistic depiction of Rep. Balint with an excavator and dropping the Congresswoman into a dumpster. Compl. ¶ 27. Though the video is realistic, it does not appear to be genuine. Compl. ¶4. The video does not include any disclosure that it was created using synthetic media. The video garnered tens of thousands of views. Compl. ¶¶ 27-28.

Five days after the video was posted, the Vermont Attorney General's Office ("AGO") sent Poitras a civil investigative demand ("CID") to investigate his potential noncompliance with Act 75. Compl. ¶ 44. The CID stated that the AGO had a "reasonable basis to believe" that Poitras had violated Act 75. Compl. ¶ 45. The CID contained 15 questions of no more than two and a half lines each. Compl. Exhibit A. The questions sought basic information including who created and distributed the video, how and why it was created and distributed, and the nature of the "Planet Hank" social media accounts. Compl. Exhibit A. Many of the questions could be answered with simple "yes" or "no" responses. *See* Compl. Exhibit A. In a letter accompanying the CID, the AGO notified Poitras that, because the law was so new, he would not have to complete the questions—and the investigation would likely be closed—if he simply included the required disclosure on his video. Compl. ¶ 6. Both the CID and the accompanying letter were signed by an assistant attorney general assigned to the matter; neither was signed by Attorney General Clark. Compl. Exhibit A.

The CID initially gave Poitras two weeks from the date of mailing to respond to these questions or include the disclosure. Compl. ¶ 49. During a call with Poitras's counsel on June 23, 2026, the AGO offered Poitras an unconditional two-week extension as a courtesy, or a 30-day extension if he agreed to comply with Act 75 by adding the statutorily required disclosure. Compl. ¶ 52. Instead, Poitras initiated this lawsuit, seeking to enjoin the AGO from enforcing

4

Act 75 against him and to hold Attorney General Clark personally responsible for alleged violations of his constitutional rights.

## ARGUMENT

To survive a motion to dismiss for failure to state a claim, "a complaint must allege sufficient facts to state a plausible claim." *Salazar v. Century Arms, Inc.*, 794 F. Supp. 3d 241, 252 (D. Vt. 2024) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, the facts alleged must be sufficient to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. Whether a complaint meets this standard is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (citation modified). First, the Court must discount legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," as it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). Second, the Court determines whether the "well-pleaded factual allegations, assumed to be true" have "sufficient factual heft to show that the pleader is entitled to relief." *Hayden*, 594 F.3d at 161 (citation modified).

## I.     Poitras has not plausibly alleged that Attorney General Clark personally violated the Constitution.

To state a personal capacity claim under 42 U.S.C. § 1983, a plaintiff must "plead and prove" that the defendant, through her "own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "A defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because [s]he held a high position of authority." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016). Rather, the plaintiff must allege facts tending to show "some affirmative link to causally connect the actor with the [challenged] action and tending to show that the individual

5

was personally involved in" the challenged conduct. *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004).

As an initial matter, the Complaint does not distinguish between Attorney General Clark personally, the Office of the Attorney General, and unnamed "AGO staff." Throughout the Complaint, Poitras attributes conduct interchangeably to "the Attorney General," "Defendant," and "the Vermont Attorney General['s]" office. *See, e.g.*, Compl. ¶¶ 5, 22, 29, 44-48, 52, 79. At no point does the Complaint identify which allegations, if any, describe actions taken personally by Attorney General Clark as opposed to routine institutional conduct by her office and staff. This kind of undifferentiated, collective pleading is insufficient to state a personal capacity claim against a single defendant. A plaintiff suing a government official in her personal capacity must plead facts showing that the individual defendant herself—not the members of an office that she leads—violated the Constitution. *Tangreti*, 983 F.3d at 619 (citation modified). Poitras has not carried that burden.

Even the actions Poitras appears to attribute to "the Attorney General" or "Defendant" are in fact official activities of the AGO that cannot plausibly be characterized as Attorney General Clark's personal conduct. *See, e.g.*, Compl. ¶ 5 (alleging that "the Vermont Attorney General opened a formal investigation and served Plaintiff with a Civil Investigative Demand"), ¶¶ 46-48 (describing the CID); ¶ 52 (attributing to "Defendant" actions taken by AGO staff); ¶ 79 (attributing CID to "the Attorney General"). The CID and accompanying letter, which Plaintiff filed as an exhibit to the Complaint,, were signed by an assistant attorney general, not by Attorney General Clark herself. *See* Compl. Exhibit A.  In any event, "the conclusory assertion that a supervisory official was personally involved in the deprivation of constitutional rights,

6

without supporting factual allegations, is not sufficient to state a claim under § 1983." *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 274 (W.D.N.Y. 2014). Just so here.

To the extent Poitras claims that Attorney General Clark issued the CID out of personal bias against him or in favor of Rep. Balint, his claim fares no better. The closest the Complaint comes to supporting such a claim are the assertions the Attorney General Clark was motivated to issue the CID based on her friendship with Rep. Balint, *see* Compl. ¶¶ 36, 47, and that the CID's purpose was to shield Rep. Balint or silence Poitras, *see* Compl. ¶¶ 47, 79. But those are not factual allegations—they are simply restatements of the legal argument that Attorney General Clark was motivated by bias. Such "naked assertions devoid of further factual enhancement" do not satisfy Rule 8's pleading requirements. *Iqbal*, 556 U.S. at 678 (citation modified); *cf. Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (a plaintiff's "naked assertion" that he satisfies one element of a First Amendment claim "does not suffice to defeat a Rule 12(b)(6) motion").

The Complaint's other allegations further undermine any claim that the CID reflected Attorney General Clark's personal biases. Courts assessing analogous claims that an official investigation was driven by improper bias look to whether the investigation had an objectively reasonable basis or was instead pretextual.[3] *See Nieves v. Bartlett*, 587 U.S. 391, 404-07 (2019) (addressing First Amendment retaliation claim). But Poitras acknowledges that the AGO identified "a reasonable basis to believe" that he violated Act 75's disclosure requirements. Compl. ¶ 45; *see also id*. ¶¶ 47-48. And Poitras fails to plead any additional facts to suggest that the AGO's stated basis was pretextual. For instance, Poitras does not identify any comparators

---

[3] To be clear, the Complaint does not include a selective enforcement or retaliation claim, nor can any of the Complaint's six counts fairly be read to encompass such a claim. *See generally* Compl. ¶ 63-87.

7

who disseminated deceptive and fraudulent synthetic media concerning a Vermont candidate within the relevant window and were not investigated for doing so. *See Nieves*, 587 U.S. at 407.

Finally, Poitras's alleged harms confirm that his real objections are to Act 75 and the AGO's decision to issue the CID, not Attorney General Clark's personal actions. Poitras alleges that the CID forced him to bear costs "including the time and expense of retaining counsel and preparing a response to the demand." Compl. ¶ 51. But those alleged costs flow from the AGO's institutional decision to issue an investigative demand issued under 17 V.S.A. § 2042, not from any personal act by Attorney General Clark distinct from her supervisory authority over that Office. *See* Compl. ¶¶ 22, 45. Poitras cannot convert an injury caused by an agency's routine exercise of its statutory investigative authority into a personal capacity claim against the individual who supervises that agency. *Victory*, 814 F.3d at 67.

## II.    Attorney General Clark is entitled to qualified immunity.

A government official is entitled to qualified immunity for official acts taken during an investigation. *See Simon v. City of New York*, 727 F.3d 167, 172 (2d Cir. 2013). To overcome an official's qualified immunity, a plaintiff must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Nat'l Rifle Ass'n of Am. v. Vullo*, 144 F.4th 376, 389 (2d Cir. 2025). Qualified immunity is defeated "only if both requirements are met and applies so long as one is not met." *Id.* This Court has the "sound discretion" to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Attorney General Clark has not violated Poitras's rights, because Act 75 (and by extension, the CID) is constitutional. Laws requiring transparency or disclosure in election

communications are generally consistent with the First Amendment because they promote an informed electorate without suppressing protected political advocacy. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 369 (2010). That is because states have a "compelling interest in protecting voters from confusion and undue influence." *Burson v. Freeman*, 504 U.S. 191, 199 (1992) (citing *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 228-29 (1989)). And Act 75 is narrowly tailored to that interest. The Act applies only to materials that the speaker knows to be deceptive and fraudulent, 17 V.S.A. § 2032(a), and that either cause actual injury to a candidate's reputation or are intended to deceive the public, *id.* § 2031(1)(A). The Legislature further narrowed the Act's reach by limiting it to the 90 days before an election, *id.* § 2032(a), choosing the less restrictive means of a disclosure requirement rather than an outright prohibition, *see id.*, and carving out exceptions for newsworthy and satirical speech, *id.* § 2032(b). Finally, the Act defines the prohibited conduct and exceptions thereto with objective and ascertainable standards, *see* § 2032(a)-(b), providing ordinary readers with fair notice of what is required of them and establishing clear criteria to prevent arbitrary or discriminatory enforcement. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). The Act—and by extension, Attorney General Clark's application of it—is constitutional.

But this Court need not resolve that constitutional question for purposes of this motion. *See Pearson*, 555 U.S. at 236. Regardless of the Act's ultimate constitutionality, Poitras has not adequately alleged that Attorney General Clark violated a clearly established right. For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015). "[A] right alleged to have been violated is clearly established only if it is sufficiently clear to every reasonable official that the challenged conduct, in the specific context of the case, violates that right." *Nat'l Rifle Ass'n*,

144 F.4th at 389-90 (quoting *Radwan v. Manuel*, 55 F.4th 101, 114 (2d Cir. 2022)) (citation modified). Qualified immunity is a "demanding standard," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

No on-point authority supports Poitras's argument. After all, Act 75 is only a few months old, *see* Compl. ¶ 30, and has yet to be enforced or challenged in court, *see* Compl. ¶ 36. Accordingly, no court has had occasion to pass on the Act's constitutionality. "State officials are entitled to rely on a presumptively valid state statute until and unless the statute is declared unconstitutional" by "the federal court of appeals for the circuit in which the officials operate." *Vincent v. Yelich*, 718 F.3d 157, 170 (2d Cir. 2013) (citation modified). And enforcement of a presumptively valid statute "creates a heavy presumption in favor of qualified immunity." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 104 (2d Cir. 2003). By the same token, it was "objectively reasonable" for Attorney General Clark to believe that an investigation under Act 75 was lawful. *Taravella v. Town of Wolcott*, 599 F.3d 129, 130 (2d Cir. 2010).

Poitras cannot overcome Attorney General Clark's immunity by relying on out-of-circuit decisions involving other states' materially different statutes. Generally, "only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004). There may be limited circumstances in which a state official's qualified immunity may be overcome because "decisions from . . . other circuits clearly foreshadow a particular ruling on the issue." *Horn v. Stephenson*, 11 F.4th 163, 169 (2d Cir. 2021). But this is not one of those circumstances. Act 75 materially differs from other states' deceptive political speech statutes in ways that bear directly on the Act's constitutionality. For instance, while other states have banned deceptive

imagery outright, Act 75 simply requires speakers to disclose when their speech is fraudulent or deceptive. *Compare* 17 V.S.A. § 2032(a) *with Kohls v. Bonta*, 797 F.Supp.3d 1177, 1183 (E.D. Cal. 2025). Act 75 also requires a showing of injury, *see* 17 V.S.A. § 2031(1)(A), not merely that the imagery in question is "reasonably likely to harm" a candidate, *see Kohls*, 797 F.Supp.3d at 1184. And unlike some similar statutes enacted by other states, Act 75 expressly exempts parody from its disclosure requirements. *Compare* 17 V.S.A. § 2032(b)(3) *with Babylon Bee, LLC v. Lopez*, 818 F. Supp. 3d 1181, 1201 (D. Haw. 2026) (identifying constitutional violation because statute would proscribe parodies). Case law involving those statutes thus do not "place the constitutional question beyond debate" such that "every reasonable official would interpret [them] to establish the particular rule the plaintiff seeks to apply." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (citation modified).

Finally, it is appropriate to determine the applicability of qualified immunity now. "Although qualified immunity defenses are often decided on motions for summary judgment, in appropriate circumstances a district court may address qualified immunity at the pleadings stage." *Matzell v. Annucci*, 64 F.4th 425, 434 (2d Cir. 2023). Where discovery would not make a difference in qualified immunity analysis and where "the facts supporting [the qualified immunity defense] appear on the face of the complaint," there is "no need to postpone ruling" on a qualified immunity defense until summary judgment. *Nat'l Rifle Ass'n*, 144 F.4th at 389. That is the case here. Poitras seeks to hold Attorney General Clark personally liable for alleged constitutional violations based on her application of a brand-new, presumptively valid state statute. Qualified immunity doctrine forecloses Poitras's theory. No amount of discovery could change that fact.

11

**CONCLUSION**

The Court should dismiss Poitras's claims against Attorney General Clark in her personal

capacity.


DATED July 30, 2026

STATE OF VERMONT

CHARITY R. CLARK
ATTORNEY GENERAL


By: */s/ Samuel B. Stratton*
Samuel B. Stratton
Assistant Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3171
sam.stratton@vermont.gov

*Counsel for Defendant*